UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ANTHONY TUCKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No.: 3:21-CV-187-CLC-HBG |
| v. | ) |
| | ) |
| M. PARRIS, STACY OAKES, | ) |
| M. AVERY, EDMUND LANE, | ) |
| JENNER CONNER, LYNNDY BYRGE, | ) |
| R/N TONI, W.L. KHAN, | ) |
| NASHVILLE NEUROSURGERY | ) |
| ASSOCIATES, FRAN HALL, and | ) |
| CENTURION OF TENNESSEE, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM & ORDER**

Plaintiff, an inmate in the custody of the Tennessee Department of Correction ("TDOC"), has filed a pro se civil rights action against Defendants for alleged violations of 42 U.S.C. § 1983 [Doc. 1], along with a motion for leave to proceed *in forma pauperis* in this cause [Doc. 2].

**I.    MOTION TO PROCEED *IN FORMA PAUPERIS***

It appears from the motion for leave to proceed *in forma pauperis* [Docs. 2, 10] that Plaintiff lacks sufficient financial resources to pay the filing fee. Accordingly, pursuant to 28 U.S.C. § 1915, this motion is **GRANTED**.

Plaintiff is **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902 as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-

month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account is directed to submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Clerk is **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined. The Clerk is also **DIRECTED** to furnish a copy of this order to the Court's financial deputy. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II.     SCREENING OF COMPLAINT

### A.     Plaintiff's Allegations

At all times relevant to this lawsuit, Plaintiff was a TDOC inmate housed at the Morgan County Correctional Facility ("MCCX") [Doc. 1 at 2]. Plaintiff suffers from numerous medical conditions, including nerve damage to his feet, spinal tumors, bulging and compressed discs, and spinal facet hypertrophy[1] [*Id*. at 4]. Plaintiff received surgery consults for some of these conditions, but on at least one occasion Defendants attempted to transport a restrained Plaintiff to a physician six hours away rather than transporting Plaintiff to a local doctor [*Id*.]. When Plaintiff complained about his medical needs, he was harassed, or staff took away his hobby locker or

---

[1] "Facet hypertrophy is a condition in which there is a swelling, or enlargement, of the facet joint." DFW Spine Institute, "Facet Hypertrophy," at https://www.mispinerelief.com/facet-disease-treatment/facet-hypertrophy/ (last visited July 28, 2021).

medication as punishment [*Id*. at 3–4]. Plaintiff maintains that TDOC is responsible for these alleged injuries due to their failure to train and supervise employees [*Id*. at 5].

Plaintiff contends that Stacy Oakes, the Associate Warden of Treatment, took part in discriminating and retaliating against Plaintiff on April 7, 2021, when he ordered Ms. Fran to "write [Plaintiff] up" for requesting half a day to complete legal work [*Id*.]. On May 4, 2021, Oakes told Fran not to allow Plaintiff to go to canteen [*Id*.]. Plaintiff alleges that he was moved from the TRICOR[2] Unit but moved back again on April 7, 2021, because Defendants hoped that Plaintiff would violate a rule so that they could place him in segregation [*Id*.]. Plaintiff maintains that his forced participation in the TRICOR Unit subjected him to pain and suffering due to his serious medical needs, and that Oakes was deliberately indifferent to those needs [*Id*.].

Plaintiff alleges that Warden Parris was informed about these issues, but that he, along with Stacy Oakes, failed to train and supervise his subordinates to abate the constitutional violations Plaintiff suffered [*Id*. at 6].

Plaintiff contends that Ms. Fran caused him pain and suffering by failing to comply with TDOC policy and TRICOR rules [*Id*.]. Specifically, Plaintiff claims that she retaliated against him by threatening him, giving him disciplinary write-ups, and telling him "he had to listen to another inmate [] contrary to law and policy" [*Id*.]. Plaintiff wrote Oakes an email complaining about these events, and Fran told Plaintiff that Oakes yelled at her, and that if Plaintiff "even r[a]ise[d] a[n] eyebrow wrong" she would "make so he's gone" [*Id*.]. Plaintiff maintains that Fran refused Plaintiff's withdrawal from the TRICOR program, forcing him to stay even though she knew it

---

[2] Plaintiff does not identify this acronym, but the Court assumes it stands for the Tennessee Rehabilitative Initiatives in Correction ("TRICOR"). "TRICOR is a Tennessee agency that operates alongside the State of Tennessee Department of Corrections (TDOC) to provide rehabilitative services to TDOC inmates." *Baker v. Tennessee*, No. 3:17-147, 2017 WL 662936, at *1 (M.D. Tenn. Feb. 17, 2017).

caused Plaintiff pain to participate [*Id.*]. Plaintiff contends that TRICOR is a voluntary program, but that Fran would not let him leave without threat of a disciplinary charge [*Id.* at 7].

Plaintiff maintains that on May 7, 2021, RN Toni told Plaintiff "the next time [he] spray[ed] out some of [his] insulin, she w[ould] make sure it's gone" [*Id.*]. On May 6, 2021, Toni turned down Plaintiff's emergency sick call, stating that Plaintiff had disrespected her [*Id.*]. On March 14, 2021, an officer called at 7:40 a.m. because Plaintiff was having chest pains [*Id.*]. Plaintiff did not see anyone until March 18, 2021, when he was kicked out of the main clinic after Toni stated that nothing was wrong with Plaintiff [*Id.*]. On October 23, 2019, Plaintiff wrote for a medical class change, but Toni changed it on March 26, 2020, so that it no longer listed any medical restrictions [*Id.*]. On May 12, 2021, an individual identified only as "Lisa" informed Plaintiff that the only pain pill he takes would be given every other day [*Id.*].

MCCX physician Edmund Lane prescribed Plaintiff medication for sleep and pain, but he never examined Plaintiff's tumors or back condition, and he never prescribed an effective amount of pain medication [*Id.* at 11]. Dr. Lane, without ever examining Plaintiff, ordered Plaintiff to see a pain specialist, Dr. Li, at Nashville Neurosurgery Associates [*Id.* at 8]. Plaintiff alleges that Dr. Li never examined him either, but rather based his opinions off of old medical reports [*Id.* at 8–9]. Plaintiff maintains that he went to Nashville for treatment and court appearances at least six times between 2018 and 2019, and that the long ride caused him pain and suffering [*Id.* at 8]. Plaintiff concedes that he, at some point, refused the ride to the specialist because MCCX would not provide a disability van for the twelve-hour round-trip ride [*Id.*]. Plaintiff then began seeing a physician who "helped him," but as soon as that doctor was gone, RN Toni and Dr. Lane "took" Plaintiff's medication [*Id.*]. Also, in May 2019, an individual identified only as "Shonda" wrote that Plaintiff refused surgery, which Plaintiff contends is false [*Id.*]. Plaintiff maintains that he did refuse

4

treatment, but that he only refused physical therapy, which he had already received in the past [*Id*.].

Plaintiff alleges that MCCX Grievance Chairperson Corporal M. Avery routinely dismissed Plaintiff's grievances contrary to TDOC policy [*Id*. at 9]. Plaintiff contends that Avery's repeated refusal to resolve his grievances delayed Plaintiff's medical care and exacerbated his pain and suffering [*Id*. at 9–10].

Plaintiff contends that Lynndy Byrge and Jenner Conner, both of whom presumably provide some sort of medical care at MCCX, were repeatedly informed that Plaintiff's pain medication – Tramadol, which he takes every other day – was not working, but neither alleviated the situation [*Id*. at 10]. Moreover, Plaintiff maintains, Byrge denied him "proper transportation" to local physicians and to Plaintiff's consult at "Special Needs" [*Id*.].

Plaintiff asks the Court to order him moved to "Special Needs" until he is given proper medical treatment, require officers at MCCX to be trained, and award him monetary damages [*Id*. at 12].

**B.      Standard**

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pleaded and do not state a plausible claim, however. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. 42 U.S.C. § 1983; *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

**C. Analysis**

**1. Improper § 1983 Defendants**

Plaintiff has alleged that TDOC and Nashville Neurosurgery Associates, along with its physicians Dr. Li and Dr. Kahn, bear constitutional liability in this action [*See, generally*, Doc. 1].

**a. TDOC**

TDOC is an arm of the State of Tennessee, and as such, a suit against TDOC is a suit against the State. *See Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding TDOC is equivalent of the "State"). "[A] State is not a person within the meaning of § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989); *Hix*, 196 F. App'x at 355 (holding TDOC is not a "person" within meaning of 1983). Moreover, the Eleventh Amendment prohibits

6

suits against a state or its agencies in federal court for damages, unless Congress has abrogated its immunity, or the state has expressly waived it. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-101 (1984); *Quern v. Jordan*, 440 U.S. 332, 345 (1979). This immunity extends to claims for injunctive and equitable relief. *See Lawson v. Shelby Cty.*, 211 F.3d 331, 335 (6th Cir. 2000) ("[T]he [Eleventh] Amendment prohibits suits against a 'state' in federal court whether for injunctive, declaratory[,] or monetary relief.").

The State of Tennessee has not waived its immunity to suit under § 1983. *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under § 1983). Accordingly, Plaintiff cannot maintain suit against TDOC, and TDOC will be **DISMISSED**.

### b. Private Hospital & Physicians

The Court notes that Nashville Neurosurgery Associates, along with physicians Dr. Li and Dr. Kahn, do business in Davidson County, Tennessee, which is a different judicial district. Specifically, Davidson County lies within the Nashville Division of the Middle District of Tennessee. *See* 28 U.S.C. § 123(b). Accordingly, venue is not appropriate in this Court for Plaintiff's claims against these Defendants. *See* 28 U.S.C. § 1391(b)(1)–(3). While the Court may transfer a civil action to any district or division where it could have been filed originally "in the interest of justice," *see* 28 U.S.C. § 1406(a), the Court finds no reason to do so in this instance, as neither a private hospital nor its physicians are state actors for purposes of § 1983. *See e.g., Crowder v. Conlan*, 740 F.2d 447, 449-453 (6th Cir. 1984) (holding private hospital not a state actor for purposes of § 1983 despite fact that it derived revenue from government sources, was heavily regulated, had public officials on its board of directors, and was purchased by the county and leased back to the board of trustees). Therefore, Defendants Nashville Neurosurgery

7

Associates, Dr. Li, and Dr. Kahn are not subject to suit under § 1983, and these Defendants will be **DISMISSED**.

### 2. Centurion of Tennessee

Plaintiff seeks to hold Centurion, the contract medical provider for TDOC during the times relevant to this lawsuit, liable for the constitutional violations alleged. However, Centurion cannot be subject to § 1983 liability merely because it has employed someone who violated Plaintiff's constitutional rights; that is, it "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, to demonstrate that Centurion bears any liability, Plaintiff must identify a policy or custom of the entity and show that his particular injury was incurred due to the execution of that policy. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation and quotation marks omitted); *see also Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (holding plaintiff must allege "a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights). Plaintiff has not set forth any facts from which the Court could infer that his constitutional rights were violated by a policy or custom of Centurion, and this Defendant will be **DISMISSED**.

### 3. Failure to Train or Supervise

Plaintiff contends that Warden M. Parris and Associate Warden of Treatment Stacy Oakes each caused him constitutional injury by failing to adequately train and/or supervise their subordinates. However**,** the Sixth Circuit has held that government officials may be individually liable under § 1983 for a failure to supervise only if they "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982); *see also Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (explaining that supervisory liability "cannot attach where the allegation of liability is based upon

a mere failure to act[,]" . . . but rather, "must be based upon active unconstitutional behavior") (citing *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (1989)). Here, Plaintiff alleges only a failure to act by Defendant Parris, which does not raise a cognizable § 1983 claim, and he will be **DISMISSED**.

Plaintiff does allege that Defendant Oakes ordered other personnel to give him disciplinary write-ups and remove Plaintiff's canteen privileges, and he surmises that he was moved and placed in the TRICOR unit to make him violate the rules so he could be placed in segregation. Plaintiff's allegations concerning his move and placement in the TRICOR unit are wholly speculative and conclusory, and therefore, they fail to state a constitutional claim. *See Iqbal*, 556 U.S. at 678, 681 (holding conclusory allegations fail to state a constitutional claim). Moreover, Plaintiff has no constitutional right to be free from disciplinary write-ups or maintain canteen privileges, and therefore, he cannot state a constitutional failure-to-supervise claim against Oakes with regard to these allegations. *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974) (noting inmates have no constitutional right to be free from disciplinary charge); *Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e know of no constitutional right of access to a prison gift or snack shop."); *Grady v. Garcia*, 506 F. App'x 812, 814-15 (10th Cir. 2013) (finding on due process claim where plaintiff was denied canteen privileges for 105 days). Therefore, Defendant Oakes will likewise be **DISMISSED**.

### 4. Failure to Remedy Grievances

Plaintiff maintains that Corporal M. Avery repeatedly dismissed his grievances, which led to Plaintiff being denied medical treatment and access to court. However, inmates have no constitutional right to a grievance procedure, and they therefore have no interest in having any such grievances satisfactorily resolved. *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). Further,

9

Defendant Avery cannot be held liable for failing to provide Plaintiff with a remedy through the grievance procedure, as "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight,* 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

Moreover, Plaintiff has not demonstrated that Defendant Avery's actions prevented him from pursing any legal claim, and therefore, his allegation that he was denied access to the courts fails to state a claim upon which relief may be granted. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("An inmate who claims his access to the courts was denied fails to state a claim without any showing of prejudice to his litigation.").

Therefore, Plaintiff's allegations against Defendant Avery fail to state a claim upon which relief may be granted under § 1983, and Defendant Avery will be **DISMISSED**.

### 5. Failure to Follow Policy

Plaintiff contends that Defendant Fran failed to follow TRICOR and TDOC rules. However, § 1983 remedies violations of federal law, not the standards of states or their agencies. *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 924 (1982). Accordingly, this allegation fails to rise to the level of a constitutional violation, and this claim will be **DISMISSED**. *See McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (holding failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).

### 6. Medical Treatment

The crux of Plaintiff's complaint is that Defendants denied him adequate medical care in violation of his constitutional rights. The United States Constitution does not guarantee a prisoner "unqualified access to healthcare." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). However, the denial of constitutionally adequate medical care violates the Eighth Amendment's prohibition

10

against cruel and unusual punishment, which proscribes acts or omissions that produce an "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). An Eighth Amendment claim for the denial of adequate medical treatment is composed of two parts: (1) an objective component, which requires a plaintiff to show a "sufficiently serious" medical need; and (2) a subjective component, which requires the plaintiff to show the defendants acted with "deliberate indifference" to that need. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). Negligence is insufficient to establish liability; deliberate indifference requires a mental state amounting to criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839–40). Therefore, to establish an official's liability, a prisoner must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

A prisoner cannot state a claim of deliberate indifference by suggesting that he was misdiagnosed or not treated in a manner he desired. *Sanderfer v. Nichols*, 62 F.3d 151, 154–55 (6th Cir. 1995) (finding provider possibly negligent but not deliberately indifferent when unaware of prisoner's serious heart condition); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997) (finding "misdiagnoses, negligence, and malpractice" are not "tantamount to deliberate indifference"). As the Supreme Court has explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) (internal quotation marks omitted).

Further, where medical treatment has been provided, a prisoner's disagreement with the adequacy of care does not implicate the Constitution. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1996). This is because "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Id.* Rather, to state a constitutional claim, such a prisoner must show that his treatment was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2001).

In his complaint, Plaintiff concedes that he receives insulin, some of which he apparently disposes of because he thinks the dosage is wrong [*See* Doc. 1 at 7]. Plaintiff also notes that he has been prescribed sleep and pain medication, though he does not believe that the dosages are correct [*See, e.g., id*. at 8, 11]. Plaintiff complains that he was denied emergency treatment and then later "kicked out" of the main clinic, but he acknowledges that he was seen by medical personnel [*Id*. at 7]. Plaintiff is aggrieved that medical restrictions were removed from his classification, but he also states that he requested a medical class change [*Id*.]. Plaintiff acknowledges that he has received numerous surgical consults and/or specialty visits as a result of referrals by Defendant medical personnel, and he acknowledges that he refused transport on at least one of these occasions because it was not the means by which he believed he should travel [*Id*.].

The allegations levied by Plaintiff — where not conclusory — do not allow the Court to plausibly infer deliberate indifference to Plaintiff's medical needs. Rather, they lead to the inference that Plaintiff desires to dictate the course and circumstances of his medical care, which are not constitutional rights he possesses. Accordingly, Plaintiff's claims for the denial of medical treatment will be **DISMISSED**.

12

Case 3:21-cv-00187-CLC-HBG   Document 11   Filed 08/04/21   Page 12 of 14   PageID #: 69

### 7. Discrimination/Retaliation/Harassment

Plaintiff contends that he has been harassed, discriminated against, and retaliated against for requesting adequate medical treatment.

To establish a retaliation claim, Plaintiff must show that: (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Here, the Court finds that Plaintiff has not set forth facts that would allow the Court to infer a plausible causal connection between the first and second elements of a retaliation claim. Plaintiff's subjective belief that he received disciplinary charges, etc., for requesting medical care is insufficient to state a claim. *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997). Accordingly, Plaintiff's conclusory allegations of Defendants' retaliatory motives are insufficient to state a claim for retaliation under § 1983. *See, e.g., Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987). Therefore, this claim will be **DISMISSED**.

Next, the Court considers Plaintiff's allegations of discrimination under the Equal Protection Clause, which provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. In order to state a viable equal protection claim, "a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)). Plaintiff has set forth no facts indicating that he was treated disparately compared to similarly situated individuals,

and therefore, this claim will be **DISMISSED**. *See Iqbal*, 556 U.S. at 678 (holding conclusory allegations fail to state a constitutional claim).

Finally, to the extent Plaintiff alleges that any named Defendant "harassed" or threatened him, such conduct does not state a constitutional violation. See *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987). Any such claim, therefore, will be **DISMISSED**.

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 2] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to mail a copy of this memorandum opinion and order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

5. Even with liberal construction, Plaintiff's complaint fails to state a claim upon which relief may be granted under § 1983, and this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A;

6. All other pending motions are **DISMISSED** as moot; and

7. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED**.

**ENTER:**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**